IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ATAIN SPECIALTY INSURANCE COMPANY f/k/a USF INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>PARKLYN BAY COMPANY, LLC,<br><br>    Defendant. | No. CV 12-05665 CRB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

This action is brought by Atain, an insurance company, which is seeking a judicial declaration that it does not have a duty to defend or indemnify Parklyn Bay, the owner of a San Francisco apartment building, in connection with an apartment renovation project. For the reasons below, this Court GRANTS Atain's Motion for Summary Judgment (dkt. 17).

**I.  BACKGROUND**

Parklyn purchased an insurance policy from Atain for a year-long period beginning on October 8, 2010. See Hanson Decl. (dkt. 23-2) ¶ 3. The policy provided coverage for the acts or omissions of the designated contractor for the project, which in this case was the apartment complex itself, Parklyn. See Policy (dkt. 19-1) at 5. In 2010, Parklyn began a renovation project to replace the exterior walls and windows of the apartment building. See Compl. ¶ 12 (dkt. 1). In 2011, Parklyn undertook capital improvements in the unit rented by

Dr. Bradford Duncan and Dr. Clark Carrol (hereinafter, "Tenants"), causing large quantities of dust, debris, and unknown contaminants to enter their unit. Id. ¶ 15. The Tenants were informed by a contractor that the ceilings had tested positive for asbestos, id. ¶ 15, and vacated the premises, id. ¶ 16. Shortly thereafter, the Tenants learned that the carpet in their unit contained asbestos. Id. ¶ 17.

On June 15, 2012, the Tenants filed a complaint for damages against Parklyn in the Superior Court of California for San Francisco County. See Williams Decl. (dkt. 23-1) ¶ 5.[1] The Tenants alleged that they suffered damages resulting from Parklyn's fraudulent misrepresentation that their ceiling was free of asbestos, as well as the dust, debris, and contaminants that infiltrated their apartment unit during the 2011 construction project. Compl. ¶ 15. In August 2012, Parklyn tendered defense of the Tenants' action to Atain. Williams Decl. ¶ 13. Shortly thereafter, Atain disclaimed coverage and refused Parklyn's tender of defense. Id. ¶ 14. Atain filed this suit in November 2012, seeking a judicial declaration that it does not have a duty to defend Parklyn against the Tenants' action under the insurance policy at issue. See generally Compl. (dkt. 1). Atain now moves for summary judgment.

## II.   LEGAL STANDARD

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable trier of fact to find for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case. See id. at 248.

---

[1] In their complaint, the Tenants stated ten causes of action: fraud, negligent misrepresentation, breach of the implied warranty of habitability, nuisance, breach of quiet enjoyment, three violations of Rent Ordinance § 37.9, violation of Civil Code § 789.3, and negligence. Compl. ¶¶ 28-75.

In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and must draw all inferences in a light most favorable to the non-moving party. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 629 (9th Cir. 1987). A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. See id. at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. See id.

Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. See Celotex Corp., 477 U.S. at 323.

Summary judgment is "an appropriate means of determining coverage under an insurance policy where there are no issues of material fact to be tried and the sole issue before the court is one of law." State Farm Fire & Cas. Co. v. Eddy, 267 Cal. Rptr. 379, 382 (1990) (citing Pepper Indus., Inc. v. Home Ins. Co., 67 Cal. Rptr. 904 (1977)). A court may interpret insurance policies using the ordinary rules of contract construction. See Yalter v. Endocare, Inc., 412 Fed. App'x 24, 25 (9th Cir. 2011). Thus, "if contractual language is clear and explicit, it governs." Id. (citing Bank of the West v. Sup. Ct., 10 Cal. Rptr. 2d 538 (1992)).

"The insurers have a heavy burden when seeking summary judgment on the duty to defend. As noted, an insurer must defend its insured so long as the complaint at issue raises the possibility that the insured will be liable for losses covered by its policy." Anthem Elect.,

3

Inc. v. Pac. Emp'rs Ins. Co., 302 F.3d 1049, 1056 (9th Cir. 2002) (citing Montrose Chem. Corp., 861 P.2d 1153, 1157 (1993)). Simply put, "the insured need only show that the underlying claim may fall within the policy coverage; the insurer must prove that it cannot." Ortega Rock Quarry v. Golden Eagle Ins. Co., 46 Cal. Rptr. 3d 517, 522 (2006).

"Where there is no possibility of coverage, there is no duty to defend." Waller v. Truck Ins. Exch., Inc., 900 P.2d 619, 637 (1995). However, "once the duty to defend attaches, the insurer is obligated to defend against all of the claims involved in the action, both covered and noncovered, until the insurer produces undeniable evidence supporting an allocation of a specific portion of the defense costs to a noncovered claim." Hogan v. Midland Nat'l Ins. Co., 476 P.2d 825, 836 (1970).

## III. DISCUSSION

The Court finds that Atain does not have a duty to defend Parklyn against any of the underlying claims because: (1) Parklyn's acts as landlord, rather than as a contractor, are not covered by the policy; (2) intended, expected events are not "occurrences" covered by the policy; and (3) the policy excludes coverage of any asbestos-related claims.

### A. The Policy Does Not Cover Claims Arising From Parklyn's Acts as a Landlord

First, Atain argues that Tenants' sixth through tenth causes of action are excluded from policy coverage because they stem from Parklyn's actions as landlord, not as a contractor. Mot. at 10. In these five claims, the Tenants allege that: (1) Parklyn did not comply with San Francisco Rent Ordinance § 37.9(a)(11) due to its failure to provide proper notice or pay relocation expenses when undertaking capital improvements; (2) Parklyn violated Rent Ordinance § 37.9(e) and Civil Code § 789.3[2] by changing the locks on the Tenants' unit; (3) Parklyn engaged in tenant harassment in violation of § 37.9B; and (4) as the landlord and owner of the property, Parklyn violated its duty to exercise reasonable care to avoid foreseeable harm to the Tenants. Compl. ¶¶ 53, 58, 63, 68, 73.

---

[2] Violations of § 37.9(e) and § 789.3 constitute two separate causes of action, but are united here because of their identical factual basis.

4

The plain language of the insurance policy only covers Parklyn's acts with respect to its activities as a contractor, not its activities as a landlord. Policy at 5. Furthermore, the policy contains a "classification limitation," which limits the policy coverage with respect to Parklyn's activities as a contractor in connection with the "Apartment Complex Renovation." Id.

Parklyn responds that focusing on the language of the claims alone is "picayune parsing of an underlying complaint by the insurer in order to disclaim as constructing a formal fortress of a third party's pleadings in order to retreat behind its walls." Opp'n at 19 (citing Gray v. Zurich Ins. Co., 419 P.2d 168, 181 (1966)).[3] Parklyn further argues that the Tenants have made allegations against Parklyn in its supervisory capacity. Opp'n at 19. A review of the complaint reveals no such allegations.

The Court agrees that the aforementioned claims are excluded due to Parklyn's role as contractor. According to the plain language of the relevant rent ordinances and civil code provisions, the duty to comply with the relevant laws belongs to the landlord. Compl. ¶¶ 53, 68. With regard to the negligence claim, although the Tenants may allege that Parklyn, as either the landlord or the contractor, acted negligently, their allegations are explicitly directed at Parklyn "as the landlord and owner of the property." Compl. ¶ 73. Thus, the sixth through tenth causes of action do not raise a duty to defend as a matter of law because the policy does not cover Parklyn's acts as a landlord.

### B. The Policy Does Not Cover Claims Arising From Intentional Conduct

Second, Atain argues that the Tenants' first, second and fifth causes of action are outside the scope of the policy because their allegations do not arise from an "occurrence" within the meaning of the policy. The Tenants allege that (1) Parklyn's supervisor of

---

[3] Gray holds that in cases where contractual language is ambiguous, and where the parties have unequal bargaining power, it is permissible to broadly construe the language of the pleadings in order to examine all potential liability created by the suit. Gray, 419 P.2d 168, 176-81. Gray does not speak to the situation at hand, where the parties have relatively equal bargaining power and the contractual language is imminently clear. Indeed, the Ninth Circuit has declined to extend Gray beyond its limited context, noting that Gray solely involved "an ambiguous policy exclusion which sought to limit a clear coverage provision." Bowie v. Home Ins. Co., 923 F.2d 705, 708 (9th Cir. 1991).

5

maintenance intentionally misrepresented to them that their ceiling did not contain asbestos, (2) that the supervisor of maintenance made a negligent misrepresentation when he stated that the unit did not contain asbestos, and (3) that Parklyn's acts constituted a breach of quiet enjoyment. Compl. ¶¶ 29, 35, 49.

The insurance policy only covers bodily injury or property damage caused by an "occurrence," defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Policy at 9. Courts have defined the terms "accident" and "occurrence" as unexpected and unintended events. Anthem, 302 F.3d at 1055 (holding that an occurrence is "simply an unexpected consequence of an insured's act"); Shell Oil Co. v. Winterthur Swiss Ins. Co., 12 Cal. Rptr. 2d 815, 855 (1993) (holding that an accidental event is both "unintended and unexpected"). Parklyn does not contest this definition.

Given that the Tenants' first claim explicitly alleges that the representations were made "with intent to deceive," Atain is correct that the incident cannot be considered an "unintended" event. Compl. ¶ 30 (emphasis added). Further, the Tenants' second claim of negligent misrepresentation requires an intent to induce reliance, and thus cannot be an "unintended" event covered by the policy. See Safeco Ins. Co. of Am. v. Andrews, 915 F.2d 500, 502 (9th Cir. 1990); see also Chatton v. Nat'l Union Fire Ins. Co., 13 Cal. Rptr. 2d 318, 328 (1992) (holding that negligent misrepresentations about "facts relevant to the property's value and desirability" are considered "purposeful rather than accidental for the purposes of insurance coverage").

Similarly, the Tenants' fifth claim that Parklyn's acts constituted a breach of quiet enjoyment is not an "unintended" event, as it stems from Parklyn's allegedly intentional failure to comply with rent ordinances mandating that Tenants receive advance notice of capital improvements. Compl. ¶ 53. That is, had the Tenants been properly notified of the renovation project, the invasion of "large quantities of dust, debris, and unknown contaminants" would not have affected the Tenants' quiet enjoyment of the premises.

6

Compl. ¶ 49.[4] Thus, the Tenants' first, second and fifth causes of action do not trigger a duty to defend as a matter of law, because none of the claims arises from an "occurrence."

### C.  The Policy Excludes Coverage of Claims Related to Asbestos

Atain argues that the Tenants' third and fourth causes of action are not within the policy due to the policy's asbestos exclusion. The Tenants allege (1) a breach of the implied warranty of habitability, resulting from the presence of asbestos in the Tenants' unit, and (2) that the presence of asbestos constitutes a nuisance due to its interference with the comfortable use and enjoyment of the property. Compl. ¶¶ 42, 46.

The policy language specifically excludes coverage of any asbestos-related claim: "This insurance does not apply to bodily injury or property damage, in whole or in part, either directly or indirectly arising out of, or attributable to . . . asbestos." Policy at 35. Atain is correct that these claims do not trigger a duty to defend because they explicitly stem from the presence of asbestos in the unit, and thus are outside the scope of the policy.

Because each of the ten claims brought by the Tenants against Parklyn fall outside of clearly designated policy coverage, Atain has no duty to defend Parklyn. Accordingly, the Court finds that Atain is entitled to summary judgment.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Atain's motion for summary judgment.

**IT IS SO ORDERED.**

Dated:  July 23, 2013

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

---

[4] Tenants imply that, had they been informed of the renovation sooner, they could have covered their personal belongings within the unit to avoid exposure to the dust and debris. Resp. to Duncan Spec. Interrog. (dkt. 23-5) ¶ 73.

7